JOHN W. LEFTWICH, Survivor, &c., v. WILLIAM M. CLINTON, impleaded, &c.

(GENERAL TERM, THIRD DEPARTMENT, DECEMBER, 1870.)

F. T. L. resided in that part of Tennessee which became subject to the provisions of the president's proclamation of August 16, 1861, which prohibited "all commercial intercourse between" the States specified "and the inhabitants thereof, with citizens of other States," and remained there up to and after the time of the proclamation. J. W. L., his partner, resided at the same place, but fled, on the breaking out of the war, into the Union lines, and adhered to the Union cause, though compelled to make provision for his family near his place of residence.

— *Held*, in the absence of proof of F. T. L.'s loyalty or disloyalty to the Union, that he was within the prohibitions of the proclamation, and thereby, and as a citizen of a belligerent State, precluded from making a commercial contract with a citizen of a loyal State; but that it was otherwise as to J. W. L.

*Held*, further, that the partnership was terminated, *ipso facto*, by the war.

Where in an action by F. T. L. and J. W. L. against the defendant, claiming interest in the profits of a contract for the purchase of cotton, upon unprohibited territory, during the continuance of the proclamation, F. T. L. died before trial, and the suit was continued, under order of the court, by J. W. L., as survivor. — *Held*, that the rights of J. W. L. were protected, notwithstanding the invalidity of the contract in respect to F. T. L., and might be enforced in the action, and that J. W. L. could recover his share of the profits.

APPEAL by the plaintiff and defendant from decision of judge at Special Term.

Action to recover one-half of the profits of certain cotton speculations in middle Tennessee in the spring of 1862.

The cause was tried before Hon. RANSOM BALCOM at the Otsego Special Term in April, 1868. It appeared upon the trial that in March, 1862, the plaintiff, John W. Leftwich, who had previously resided at Memphis, Tennessee, and who had fled from there in consequence of the rebellion, entered into a contract with the defendant Buel, who was then in the employment of the defendant Clinton, near Nashville, Tennessee, that portion of the country then being in the possession of the federal army, for the purchase of cotton within terri-

Leftwich *v.* Clinton.

tory occupied by or under the control of the military forces of the United States.

. The defendants lived in New York, and the contract was claimed to have been made on the behalf of the plaintiff and his brother, F. T. Leftwich, who then and previously resided at Memphis, which was then under the control of the confederate government. Cotton was purchased under this agreement to a considerable amount, and the action was brought to recover the shares of the plaintiffs in the profits, which were claimed to be one-half. Other facts bearing upon the question involved are referred to in the opinion.

The justice made and filed his written decision, directing a dismissal of the complaint as against Buel, who had been made a defendant, but, as appeared on the trial, was only Clinton's agent in the matter, and directing judgment in favor of the plaintiff against defendant Clinton for only one-fourth of such profits, instead of the one-half claimed, viz.: for $3,873, and interest from August 1st, 1862, $1,599, amounting in all to $5,472. Judgment was entered accordingly July 22, 1868, for the amount and costs, $6,221.35.

The defendant Clinton appealed therefrom to the General Term in August, 1868, and the plaintiff in September following appealed from so much thereof as limited the plaintiff's recovery to one-fourth of the profits, and from that part limiting such recovery to $5,472, besides costs, and from so much thereof as adjudged that the plaintiff was entitled to recover his share of the profits in only 350 bales of cotton, which appeal was brought for the purpose of modifying, or, as expressed, "of increasing the judgment and making it a judgment for one-half of the profits on the cotton bought and sold, but not to reverse the judgment or obtain a new trial."

The appeal was heard at General Term, in the sixth district; and the judgment was affirmed without costs. A motion was made for a reargument, upon the ground that the justice, before whom the cause was tried, was disqualified to sit in the case at General Term, and the motion was granted.

*J. E. Downs,* for the appellant. To show that J. W. Left-wich was not within any principle at any time a public enemy, cited *Sanderson* v. *Morgan* (39 N. Y., 231); *The Peterhoff,* 5 Wallace, 28–60; Prize Cases, 2 Black., 635; *The Venice,* 2 Wallace, 258; *Mrs. Alexander's Cotton,* id. 404, 419; 6 Wallace, 521, 528, 531; 3 Wallace, 632; *Graham* v. *Merrill* (8 Am. Law Reg., 477); 12 U. S. Stat. at Large, 257.

*L. J. Burditt,* for the respondent. On the same point, cited *Houghton* v. *Ault* (16 How., 77); *Chaine* v. *Wilson* (8 Abb., 78); *Hanger* v. *Abbott* (U. S. S. C., Dec. Term, 1867). No opinion. (*Jackson Ins. Co.* v. *Stewart,* 6 Am. Law Reg. N. S., 732; Prize Cases, 2 Black., 635; *Griswold* v. *Wadding-ton,* 15 John., 57; id., 16 John., 438; *The Julia,* 8 Cranch., 181; *Mrs. Alexander's Cotton,* 2 Wallace, 417; *The Venice,* id., 273; Proclamation of August 16, 1861, 13 U. S. Stat. at Large, 730; id., 763.)

Present—MILLER, P. J., HOGEBOOM and PARKER, JJ.

MILLER, P. J. The plaintiffs in this action, originally, sought to recover their proportion of the profits of certain cotton speculations, in middle Tennessee, in the spring of 1862. The agreement entered into between the parties is alleged in the complaint to have been made by the plaintiff, John W. Leftwich, on behalf of himself and F. T. Leftwich, who, it is averred, at the time were, and continued to be, jointly and equally interested in the contract, and of whom John W. Leftwich, at the time of the trial, was the survivor, and in whose favor judgment was entered as such survivor. The principal point made by the defendant against the right of the plaintiff to recover is that the contract as proved was void, as being between citizens of belligerent States, and in violation of the proclamation of the president of the United States, of the 16th of August, 1861, made in pursuance of the act of congress of July, 1861. The proclamation declared certain States in insurrection, and prohibited " all commercial

intercourse between such States and the inhabitants thereof with citizens of other States, excepting West Virginia," and such parts of other States as may maintain a legal adhesion to the Union and Constitution, or may be from time to time occupied and controlled by the forces of the United States engaged in dispersion of said insurgents." F. T. Leftwich, who died before the action was tried, was a brother and a former partner of John W. Leftwich, in whose favor the judgment was rendered, and as the judge found upon the trial the copartnership had not as a matter of fact been dissolved by any agreement or understanding between them, When the contract was made he was a resident of the State of Tennessee, within the confederate lines and jurisdiction. During the period within which the agreement was made and the purchasing and shipping of the cotton in middle Tennessee, there was no evidence of his loyalty, or that he ever took the oath of allegiance, or that he was disloyal at any time. As, however, he was not under the control of the federal government, he must be considered as embraced within the prohibition of the proclamation of the president. So far, then, as he is concerned, it may be assumed that he was a public enemy of the United States, and his contract was void and cannot be inforced. He could not, therefore, be a partner of John W. Leftwich if the latter was a loyal citizen of the United States. The war terminated the copartnership, and it thereby became dissolved, if any had existed prior to the war. If this position is correct, then John W. Leftwich would remain as the sole plaintiff in the case. He also became such by the order of the court, by which the action was continued in his name as survivor, upon his brother's decease. Even if it be conceded that F. T. Leftwich was a partner of John W. Leftwich, disabled by his residence within rebel territory from maintaining an action, yet it is by no means clear that such fact should operate to prevent a recovery by the plaintiff if otherwise entitled to relief. The fact that F. T. Leftwich was once a party and claimed an interest in the action, it seems to me,

Leftwich *v.* Clinton.

should not operate as a complete denial of the claim made, after he ceased to be a party to the action. I am not satisfied that his being once a party, so far tainted and corrupted the whole cause of action as to bar a recovery and present a legal defence, after his name had been stricken from the record. It may be added, although not, perhaps, material, that the court, on the trial, did not find that F. T. Leftwich and John W. Leftwich were partners, at the time of making the agreement in question. Assuming that F. T. Leftwich had no standing in court, by reason of his relations to the government of the United States, while the rebellion was in progress, the question arises whether John W. Leftwich came within the exception provided in the president's proclamation, and whether the contract made by him with Buel, the agent of the defendant, Clinton, was lawful and valid.

The evidence shows that the plaintiff, John W. Leftwich, was not, in fact, a public enemy, although residing at Memphis with his family at the time the war broke out, and within confederate territory. He was hostile to secession at its inception, voted against it, and never gave his adhesion to the rebel government. He opposed secession, and fled from the territory within the control of the confederate authorities. He was a refugee, firmly adhering to the government of the United States, abandoned his property to confiscation, and, on the first occasion presented, took the oath of allegiance to the United States government. Although he left his family behind him, at a place of safety, some miles from his former residence, for the alleged reason that he could not have taken them away without attracting attention and being arrested, he was not, in any sense, a rebel, and is not to be so regarded by the courts. Allowing full force to the doctrine that an individual in open hostility to the government to which he owes allegiance, and which he opposes with arms in his hands, is not entitled to consideration in a court of justice of the government to which he is hostile, and that his contracts cannot be enforced, it can scarcely be claimed that a person who abandons his home and flees from the atmosphere of treason and

Leftwich *v.* Clinton.

locates in another State cannot make a lawful contract. Such a person cannot be considered as an alien enemy or incapable of prosecuting a claim because he adhered to an organized rebellious government. (See *Sanderson* v. *Morgan*, 39 N. Y., 231.) The plaintiff was, to all intents and purposes, a loyal citizen, and the contract he made was not one by which the government could be at all injured, and, therefore, should be enforced. It would be a monstrous doctrine to hold that a plaintiff under such circumstances was deprived of his rights; and I cannot agree with the position taken, that the former residence and domicil of the party must be considered as controlling, without regard to his sentiments.

The plaintiff being competent to contract, he had an undoubted right to enter into an agreement with the defendants, within any territory which was embraced within the exception of the proclamation of the president of the United States, to which reference has been made, and which was occupied and controlled by the government of the United States. Here the plaintiff had a right to enter into any agreement, and to make purchases. Within those limits, and within the territory occupied and held by the military forces of the United States, the contract between these parties was entered into, and the purchases of cotton made, and here it was sanctioned by the authorities of the government. The right thus to engage in "commercial intercourse" has been sanctioned by an adjudication of the Supreme Court of the State of Tennessee, in *Graham* v. *Merrill* (8 Am. Law Reg., 477). This decision holds, in an analogous case, that such trade was authorized by the president's order of February 28, 1862, in pursuance of the act of congress of July 13, 1861.*

---

* NOTE.—The president's order was as follows: " Considering that the existing circumstances of the country allow a partial restoration of commercial intercourse between the inhabitants of those parts of the United States heretofore declared to be in insurrection and the citizens of the loyal States of the Union, and exercising the authority and discretion confided to me by the act of congress approved July 13th, 1861, entitled " An act to provide for the collection of duties on imports, and for other purposes," I do hereby license and permit such commercial intercourse, in all cases within the rules

The case of *Billgury* v. *Branch* (8 Am. Law Reg., 334) sustains the same doctrine. This view of the question is also upheld by the able opinion delivered at the General Term, when this case was first heard.

The proclamation of the president of the 2d of April, 1863, revoking the exceptions made in the proclamation of August 16, 1861, does not, in my opinion, interfere with the rights acquired under the latter, or interpose any disability to a recovery under prior contracts made while it was in force.

It follows from the views expressed that the case was rightly decided at Special Term, and the judgment must be affirmed.

The plaintiff abandons the appeal taken by him from the judgment; but this, I think, does not entitle the defendants to costs, as against the plaintiff, as they succeed only in part. As the case stands, neither party should have costs as against the other.

HOGEBOOM, J., dissented.

Judgment affirmed.

---

and regulations which have been or may be prescribed by the secretary of the treasury for the conducting and carrying on of the same on the inland waters and ways of the United States." [Rep.]